interview questionnaire simply speaks to whether the Person: a) wants to live in the community, b) wants to live closer to their family, and c) [ed. somehow] understands what is involved in living in the community. In the Settlement, the existence of sufficient community support services for the Person's condition is taken for granted, despite the small scale nature of typical community facilities. There does not appear to be any overriding scoring criteria whether the Person's life needs can be reliability met in a community living situation. As such, the Person's life (or at least their wellbeing) may therefore be in jeopardy. "Want" and "realistic ability" are often distinct opposites. I felt the assessment criteria is NO more rigorous than asking if the Person: a) wants ice cream and b) knows that ice cream is cold and comes in various flavors, but fails to take into account the Person in reality suffers from a severe lactose allergy.

I also find it confusing that two of the Persons (Edgett and Baldwin) named in the original Complaint were discharged from State Centers to community facilities and were subsequently returned to Centers, twice in the Baldwin case for behavioral issues. This seems to undermine the position that community placement is universally applicable.

I therefore object that the Class inclusion criteria (per the Settlement Agreement) is NOT sufficiently stringent or realistic to determine the appropriateness of relocation from a State Center setting to a community-based facility for a Person with extensive care needs.

Objection 3 – My Wishes Lack Permanence

I acknowledge that – based on my opposition to community placement – Carol is currently not a member of the Settlement Class and therefore would not be placed on the Planning List at this time. However, based on my review of all the Settlement Documents and the DPW *State Center (ICF/MR) Community Planning List Assessment* form. it appears that Carol could be moved to the Class (and Planning List) at a future date as part of the "as needed" periodic reviews.

It is presumed that Carol is incapable of making any comment or gesture indicating that that she wants or does not want community placement. As such, she would first be categorized "No Preference" on the *State Center (ICF/MR) Community Planning List Assessment*. Her further ranking on the ICF/MR Planning List is therefore dependent on the stated wishes of her involved family members or her guardian. Recall that I am the family member and Carol's does NOT have a legal guardian. My opposition to community placement places Carol in the 9th of the 13 ranked assessment categories.

The class identification procedures on pages 5-7 of the proposed Settlement Agreement requires me to repeatedly voice my opposition to Carol being placed on an ICF/MR Planning List each time the Assessment is performed. My opposition to community placement has no permanence. If I pass away or am incapacitated, the proposed Settlement Agreement will ignore my historic/recorded wishes (including those expressed by my father and me which long predate the Settlement) that my loved one remain in ICF/MR care at Hamburg Center. It is my further understanding that, the State Center, despite their 50 year caring for Carol, is unable to cast a "vote" (conclusive or otherwise) opposing community placement even if the staff in aggregate feels it would be detrimental.

JA862

The net effect is that at some point Carol could be newly categorized as being "Person has no preference with no family or guardian opposition" which would then move her onto the Planning List. I object that the process does not allow my opposition to have permanence and as such would place Carol onto the Planning List with a higher categorization (i.e., no opposition).

I further object that the proposed Settlement Agreement (see NOTICE OF CLASS ACTION page 2, The Planning List) places People on the State ICF/MR Planning List who have not indicated that they want to be on the List simply because they are unable to express a preference. "If a person does not say one way or the other if he or she wants to live in the community, he or she will be placed on the Planning List unless an involved family member or guardian does not want the person to live in the community." I feel the List (and the ranking) should be reserved only for People who actively and affirmatively express a preference for community placement. "No preference" via silence creates an unacceptable back door.

Objection 4 – No Required Status Change Notice

I object that under the proposed Settlement Agreement there is no requirement to notify me in the event that my loved one, who is incapable of making decisions for herself, is somehow deemed to have consented to community placement or has been placed on a State ICF/MR Planning List for any other reason.

Objection 5 – DRN Facility Advocate Role in Populating Planning List

I object that the proposed Settlement Agreement allows DRN Facility Advocates to have equal say with DPW personnel concerning who gets placed on the State ICF/MR Planning List. As explained in Objection 1, DRN personnel have never contacted us directly regarding Carol or our family wishes and therefore they should not have offsetting (uninformed) influence over decisions regarding Carol.

Objection 6 – Placement Feasibility Not Documented

I object to the proposed Settlement Agreement because no studies have been conducted and neither DRN nor DPW have made any showing that the Implementation Plan is feasible. There is no evidence that sufficient community care facilities are available, that these facilities are capable of meeting the needs of current ICF/MR residents, or that there will be sufficient funding to operate these community care facilities in light of recent budget cuts.

Second, I further object that stated minimum number of yearly community (out-) placements from the Centers (400 over 5 years) appears to be arbitrary and that the Settlement Agreement is unclear what to do if the community facilities are not able to accept Center residents on the Planning List at those rates.

Third, on July 25, 2011, I held a three-way telephone conference call with Carol's Hamburg Center social worker and the Hamburg Center DRN Facility Advocate for the purpose of completing the *State Center (ICF/MR) Community Planning List Assessment* form. I answered the set of questions expressing opposition to community placement (for Carol) and stating my concerns whether adequate (in number and level of care) community facilities existed to care

JA863

for Carol in her current condition. After completing the interview, I asked the DRN representative: 1) if she was familiar with Carol, 2) if she had reviewed Carol's records (Individual Support Plans et al), 3) if she was familiar with community placement, and 4) if she understood my opposition and concerns. All answers were affirmative along with the DRN representative's comment she had previously worked in the community care sector. I then asked the DRN representative to name up to five community level facilities anywhere in the state of Pennsylvania that she would consider suitable for Carol. The DRN representative could not and would not name even one facility despite my repeated inquiry. I was not seeking a commitment, just a starting point for factual discussion from the representative of the DRN organization who claims that suitable community facilities exist. The DRN advocate tried to divert from my question by explaining the origin of the lawsuit which I stated I already understood and wanted to focus specifically on Carol and not the Plaintiffs. From there, we had a "round-and-round" ten minute discussion where the DRN representative was continually evasive and bureaucratic about naming any potential community facilities. She said she could not suggest any facilities without understanding Carol's medical condition which I reminded her was freshly documented in Carol's (May 2011) ISP with which the DRN representative claimed to be familiar. After my much repeated inquiry, the only comment the DRN representative would make was that 'community placement is a complex and uncertain procedure that involves the input of many individuals and takes about a year to process.' To that I replied, 'therefore, in my view, the best outcome for Carol would be to leave well enough alone and have Carol continue to reside in the known, high quality care of Hamburg Center.' I asked that the DRN representative's inability to answer my simple question about potential community facilities be recorded as part of the *State Center (ICF/MR) Community Planning List Assessment* form process.

Objection 7 – Required Education Programs Are One-Sided

The proposed Settlement Agreement requires an education program be created for ICF/MR residents and their families regarding community placement and how to be placed on the Planning List. However, it does not provide training or insights how a current State Center resident can (and should) remain in their current Center. The proposed training and education program should include a realistic comparison of risks (as well as any benefits) of moving current Center residents with complex medical conditions to a small scale community facility. Part of this education should allow State Center personnel to advocate for continued Center-based care.

Objection 8 – Integration Plan Leads to Premature State Centers Closure

The Integration Plan requires the community placement of 400 Center residents over 5 years (and 75 placements annually thereafter) from the Planning List. Noting the current Centers population of approximately 1150 residents, this represents a 35% reduction in clients served and raises the "slippery slope" concern that DPW will be forced to close ICF-MR Centers if they are deemed to be below critical mass.

I object that this reduction in population and eventual closure will deprive me and my loved one of the choice to remain in state-run ICF/MR care. It will furthermore cause a major disruption to me and my loved one to seek and adjust to community placement as well as the ongoing anguish to monitor from a great distance the day-to-day care Carol would receive. It

is my understanding that, depending on the type of community facility, there may be contract renewal periods where the facility may reject Carol because they are not adequately able to care for her. As such, once community placement starts, it may stressfully involve a number of different successive facilities and even greater confusion and uncertainty in the future.

In addition, there are a significant number (thousands) of mentally retarded citizens in Pennsylvania who are living at home in situations where it is a struggle for family members to adequately provide their care. I feel the State's first priority should be to consider placing a number of these citizens in either the community placement capacity envisioned by the Settlement or in the State Centers that already have sufficient, unused capacity.

Objection 9 – Inadequate Status Reports

I object that the proposed Settlement Agreement requires semi-annual status reports that only quantitatively tally the number (and identity) of Center residents who were placed in the community as well as those unfortunate instances where those discharged residents were arrested, jailed or admitted to a psychiatric facility. The required status reports should also track the qualitative nature of all residents discharged under the Integration Plan and identify any subsequent transfers, deaths, injuries, or other harm that occurred post-discharge.

Objection 10 – Legal Fees Awarded

I object that the Disability Rights Network of Pennsylvania, a publicly-funded entity, will receive $432,500 in legal fees as described on page 15 of the proposed Settlement Agreement, and respectfully feel that these funds would be better spent supporting the direct care of residents either in ICF/MR or community-based care facilities.

The advocacy for the named Plaintiffs represented by the Benjamin v. Department of Public Welfare case falls within the direct day-to-day mission of DRN and its ongoing funding. According to the DRN web site, the DRN has 14 lawyers on staff and therefore the amount awarded seems excessive to have performed the work on this case which was likely, for the most part, if not entirely, done with in-house counsel. The use of outside counsel for the purpose of filing the original Complaint also seems excessive.

**Personal Concerns**

I will also comment briefly on my experience with community facilities, not necessarily for the mentally retarded, but facilities which provide care. Although my father lived in a retirement community for his first four years here in Arizona, his health declined suddenly in his fifth year. Following an extended period in a nursing home, I was required to place him in an awake staff assisted living facility (typically one with 10 or less residents). I performed a diligent search across 20 separate locations and was very concerned about the level of care (and lack thereof) I found with regard to staffing ratios, staff turnover, staff credentials and training, and overall lack of consistency with regard to these group living arrangements. Many of the facilities are lightly staffed by recent immigrants and the facilities, despite being licensed, were less than well maintained. I was fortunate to find a newly opened home that was owned by private individuals who satisfactorily owned two other facilities. It is primarily a family staffed operation. During the final days of my father's life he was one of only three residents in a ten person facility.

JA865

Because the owners were the staff in this case, he was given a high degree of attention, but I found this to be the rare exception. I encountered a similar level of concern two years later when trying to locate an assisted living facility for my father-in-law who was suffering from terminal lung cancer.

Two months ago, the 22 year old caregiver for a youth group home operated directly in my neighborhood was driving four youths (eight through 13 years old) in a mini-van when he ran a stop sign and was struck broadside by a car with the right of way. The van rolled over and two of the four youths sustained broken bones. The caregiver was taken from the scene in handcuffs when it was determined he was significantly under the influence of marijuana. This caregiver had supposedly passed a background check but his behavior was not closely monitored.

Needless to say, I am skeptical of the community-level approach unless all of the conditions (residents, staff, and facility) are ideally suited and there is a high degree of supervision to prevent errors, accidents, and abuse from occurring. I am not optimistic these facilities exist or could be generated quickly to meet the Settlement Agreement.

**Closing**

In closing, I restate my objection that my sister Carol is in any way potentially a member of this class and could in the future be actively included on the Planning List for outplacement to a community-based facility. It is unfair and presumptive that DRN sought to include Carol in the class. I do not share DRN's stated belief that all mentally retarded Persons should be housed in the community versus in Centers, and I especially do not share their belief that someone with Carol's profound condition and growing medical needs could be served in a setting with a maximum of four residents. DRN's own representative (Facility Advocate) who should be most directly knowledgeable about Carol and her needs was <u>unable and unwilling</u> to even speculate on a community facility suitable for Carol. I fully believe that Carol is best served in a facility with the scale and staffing expertise of Hamburg Center. Leave well enough alone and keep Carol off the Planning List.

I further express my concern that the proposed Settlement Agreement is the precursor to closing the State Centers and eliminating the level of care upon which Carol depends for her life.

I do not intend to participate in the fairness hearing on August 22, 2011 but welcome any questions or discussions you wish to have prior to or following the hearing.

Sincerely,

William G. Toperzer
Brother of Carol Toperzer

JA866





7011 0110 0000 7727 6880

CERTIFIED MAIL™

7011 0110 0000 7727 6880

RECEIVED
HARRISBURG, PA

AUG 0 2 2011

MARY E. D'ANDREA, CLERK
Per _____

W G Toperzer
4049 E Huber St
Mesa, AZ 85205-4023

Clerk of Court
Federal Building & United States Courthouse
228 Walnut Street
Harrisburg, PA 17108-0983

Attn:   Benjamin v. Dept. of Pub. Welfare,
No. 1:09-cv-1182-JEJ

JA867

FILED

AUG 0 2 2011

PER
HARRISBURG, PA.    DEPUTY CLERK

Amy Schwartz, Jerry Hake and Sara Greth,
4659 Breezyview Dr.
Columbia, Pa. 17512

7/18/11

Clerk of Court
Federal Building & United States Courthouse
228 Walnut Street
Harrisburg, PA 17108-0983

Robert W. Meek
Disability Rights Network of PA
1315 Walnut Street, Suite 500
Philadelphia, PA 19107-4705

Re: **Benjamin v. Dept. of Pub. Welfare, No. 1:09-cv-1182-JEJ**

Dear Mr. Meek and Judge Jones,

We are the siblings of Audrey Hake. She is a 40 year resident of Selinsgrove State Center. Audrey is profoundly autistic with hearing and visual impairments. Of her impairments, her lack of safety skills and violent outbursts are our biggest concern.

Our parents exhausted the limited options open to them when Audrey was young. They traveled the East coast for assistance. Finally they were pushed to desperation and called the Governor's office for the answer. They were able to find an environment in which she could learn and thrive. Selinsgrove State Center was the best facility at the time and we believe it still is for Audrey's needs. Audrey has excelled and the center has become her home.

The lawsuit that DRN has filed as a class action puts Audrey's safety at risk. We resent that the agency, which should also be representing Audrey's best interest, is ignoring some serious issues. DRN has not asked our opinion or that of ours parents. There is no facility in Lancaster County that can provide for Audrey's needs. There are over 16,000 plus people on a waiting list for services statewide and the forced closure of state schools will place more residents in need. Four residents have been remanded back to the State Centers by the court, suggesting that the movement of all residents cannot be a blanket approach.

We understand that costs and funding are important; however, we cannot jeopardize the safety and well-being of this population at the expense of a *few* dollars saved. Selinsgrove Center has on site physicians, registered nurses, and certified nursing assistants, whereas the group homes have certified nursing assistants at best. Physical therapy, doctor and dental appointments can be done at Selinsgrove Center, while with group homes transportation is necessary for medical care. Medicines are closely monitored and given on site at the Center, whereas group homes vary in their delivery of medication. With group homes accountability may range from the State to simply the company in charge. Authority and accountability are clearly documented and visible at the Selinsgrove Center making it, in our opinion, a more responsible provider.

The settlement includes the closing of facilities and the dispersal of the residents. There are no plans in the county to build a facility that meets the needs of Audrey. Audrey requires 24/7 care and will not receive it under the agreement of the settlement. Our family was dismayed by the 2 recent deaths of residents in licensed group homes. These deaths were the result of negligence and lack of restraint training. We are fearful for the livelihood of our sister in a group home setting that is not designed to accommodate the severity of Audrey's impairments. In addition to the for mentioned points we also oppose the settlement for the following reasons:

- We do not oppose the Plaintiff's right to choose community care for themselves, but we do object to Plaintiffs' efforts to request relief on behalf of my loved one.

JA868

- The class identification procedures on pages 5-7 of the proposed Settlement Agreement require me and my loved one to continuously voice our opposition to being placed on an ICF/MR Planning List. My current opposition to community care has no permanence If I pass away or am incapacitated, the proposed Settlement Agreement will ignore my recorded wishes that my loved one remain in ICF/MR care.

- The proposed Settlement Agreement places people on the State ICF/MR Planning List who have not indicated that they want to be on the List.

- Under the proposed Settlement Agreement no notice will be provided to me in the event that my loved one, who is incapable of making decisions for his/herself, is somehow deemed to have consented to community care or has been placed on a State ICF/MR Planning List for any other reason.
- I object that the proposed Settlement Agreement allows DRN Facility Advocates to have equal say with DPW personnel concerning who gets placed on the State ICF/MR Planning List.

- The proposed Settlement Agreement provides for educational programs teaching ICF/MR residents and their guardians how they can be placed on the State ICF/MR Planning List, but it does not provide for any educational programs describing to me and my loved one how we can maintain my loved one's current care environment and avoid being placed on the State ICF/MR Planning List. These educational programs should also include information about the potential dangers associated with community care and should include presentations from State Center advocates favoring ICF/MR care.

- The practical implications of the integration plan described on pages 9-12 of the proposed Settlement Agreement will be the depopulation and eventual closure of State-run ICFs/MR. This depopulation and closure will deprive me and my loved one of a meaningful choice to remain in ICF/MR care and will impose community based care upon me and my loved one. This is precisely the lack of choice that the United States Supreme Court cautioned against in *Olmstead v. Zimring*.

- The proposed Settlement Agreement's provisions for consolidating budget lines will deprive State-run ICFs/MR of critical funding, thereby jeopardizing the quality of ICF/MR care, risking the health and safety of my loved one, and further imposing community-based care upon me and my loved one contrary to the Supreme Court's *Olmstead* decision.

- I object to the proposed Settlement Agreement because no studies have been conducted and neither DRN nor DPW have made any showing that the implementation plan is feasible. There is no evidence that sufficient community care facilities are available, that these facilities are capable of meeting the needs of current ICF/MR residents, or that there will be sufficient funding to operate these community care facilities in light of recent budget cuts.

- The proposed Settlement Agreement provides for inadequate and one-sided status reports. Any such status report should also include reports on deaths, injuries, and other harm resulting from relocation to community-based forms of care.

- I object that the Disability Rights Network of Pennsylvania, a publicly-funded entity, will receive $432,500 in legal fees as described on page 15 of the proposed Settlement Agreement, and respectfully submit that these funds would be better served supporting the care of residents either in ICF/MR or community-based care facilities.

    Selinsgrove has always been and will be always be a safe haven for Audrey. In her case, the state center has been and will be a better provider of care. This lawsuit and settlement has destroyed the most

comforting option for our sister. The fact that her home is schedule to disappear without a plan B terrifies all of us who love and adore this special woman. We simply pray that the settlement is amended to include special people like Audrey who desperately need a state center. **Jerry Hake is the representative of our family and would like to attend and participate in the fairness hearing on August 22, 2011.**

Sincerely,

Amy Schwartz, Jerry Hake, and Sara Greth
Siblings of
Audrey Louise Hake

Al Schwartz
4659 Breezyview Dr.
Columbia, PA 17512

RECEIVED
HARRISBURG, PA

AUG 0 2 2011

MARY E. D'ANDREA, CLERK
Per _____

Clerk of Court
Federal Building & U.S.
228 Walnut St.
Harrisburg, PA 17108-

JA871



Martha Ilift
2010 10th St.
Greenville, PA 16125
724-813-0404
7/26/11

Clerk of Court
Federal Building & United States Courthouse
228 Walnut Street
Harrisburg, PA 17108-0983

Robert W. Meek
Disability Rights Network of PA
1315 Walnut Street, Suite 500
Philadelphia, PA 19107-4705

Dear Mr. Meek, Judge Jones,

I am Martha Ilift, my husband is Richard. Together we are co-guardian of my son Jeffrey. Jeffrey is 49 years old. He has been a resident at Polk Center since he was 7 years old.

He was diagnosed with severe mental retardation before the age of entrance to Polk. Confirmation may be made available upon your request. His capabilities and functions are that of a young child and unable to perform daily living necessities with out around the clock adult supervision.

At one point approximately 15 years ago an attempt was made to introduce him to group home living, the out come of this attempt was not favorable so the decision was quickly made to return him back to the place of security and comfort that he had become accustomed to. He was moved back to Polk.

I believe through the continuous updates from the staff at Polk that my son would not be a candidate for group home living. I feel such a move would hinder any possible improvement in his condition and possible set him back from any document improvement that may have already taken place. My son appears to be comfortable and happy were he is and that is the best any mother could pray their child. Protection and his happiness. I feel the stability he has at his present location provides all I could hope for.

Thank you so very much for your time and I hope this letter will be acceptable for your decision.

Respectfully,
Martha Ilift

Martha Stiff
20 10th St.
Greenville, Pa 16125

PITTSBURGH PA 152

28 JUL 2011    PM 2 T

USA
FIRST-CLASS
FOREVER



RECEIVED
HARRISBURG, PA

AUG 0 2 2011

MARY E. D'ANDREA, CLERK
Per

Clerk of Court
Federal Building & United States Courthouse
228, Walnut Street
Harrisburg, Pa. 17108-0983

1710849800

Mr. & Mrs. David Parry
601 Greenwood Street
Allentown, PA 18103-6725



July 25, 2011

Clerk of Court
Federal Building & United
States Courthouse
228 Walnut Street
Harrisburg, PA 17108-0983

Robert W. Meek
Disability Rights Network of PA
1315 Walnut Street, Suite 500
Philadelphia, PA 19107-4705

Re: Benjamin v. Dept of Pub. Welfare, No. 1:09-CV-1182-SEJ

Dear Mr. Meek and Judge Jones,

We are the parents of Dennis Parry, a resident for 49 years
at Selinsgrove Center. Our son is profoundly retarded. He
has health problems and behavioral issues. He is on pureed
foods and has several times aspirated food into his lungs
causing pnemonia. He is wheelchair bound due to several
falls resulting in broken bones. We feel very fortunate that our
son has received excellent care at Selinsgrove Center.

We do not oppose ICF/MR residents who are able to function
in a community setting. We do object to such a placement
for our son. The Proposed Settlement Agreement requires us
and our loved one to continuously voice our opposition to being
placed on an ICF/MR Planning List. Our current opposition to
community care has no permanence if we pass away or am
incapacitated, the Proposed Settlement Agreement will

ignore our recorded wishes that our loved one remain in ICF/MR care. Our son doesn't speak or understand if he is approached about community placement.

We fear the Disability Rights Network is more concerned with closing facilities and not the needs of the thousands on waiting lists. We feel the community facilities do not have sufficient help to provide for the safety and health of our son 24/7.

We also object that the Disability Rights Network of Pennsylvania, a publicly-funded entity, will receive $432,500 in legal fees. These funds would be better served supporting the care of residents either in ICF/MR or community based facilities.

Sincerely,

David Parry
David Parry
Althea Parry
Althea Parry
Parents of Dennis Parry



Mr. & Mrs. David O. Parry
601 Greenwood St.
Allentown, PA 18103

LEHIGH VALLEY PA 180

28 JUL 2011  PM 2 T

**RECEIVED**
HARRISBURG, PA

AUG 0 2 2011

MARY E. D'ANDREA, CLERK
Per

Clerk of the Court
Fdrl. Bldg. & U.S. Courthouse
228 Walnut St.
Harrisburg, PA 17108-0983

171088980O

JA876

Paula Fitzgerald Wolfe
1479 Greenery Drive
Florence, KY  41042

July 24, 2011



Clerk of Court
Federal Building & United States Courthouse
228 Walnut Street
Harrisburg, PA 17108-0983

RE:  **Benjamin v. Department of Public Welfare, No. 1:09-ev-1182-JEJ**

Dear Judge Jones,

I am **Candace Sue Fitzgerald's** legal Guardian and Sister.  Candy has been a resident of White Haven Center for more than 30 years.  She turned 60 in April of this year.  My parents adopted Candy when she was five days old, (I was seven and a half at the time).  By the time Candy was six months old my parents (my father was a career Navy officer) knew Candy was not developing as a normal baby.  They worked with doctors and psychologists for more than eight years before deciding that it was in Candy's and our family's best interest to send Candy to the Martha Lloyd School for Exceptional Girls in Troy, Pa.  For the first time in Candy's life, she slept through the night.  She even learned to write her name. Unfortunately, as the school changed hands, the staff's response to control Candy's explosive behavior was to administer more and more drugs.  Over time, that excess medication had the opposite effect and began causing physical damage.  Candy was moved to White Haven in the 1970s.  Her quality of life immediately improved and has been excellent ever since arriving at White Haven.

Candy's general physical condition has weakened with age and she is now in a wheel chair because of balance issues.  She requires bed rails for her safety and needs assistance with all of her daily living activities.  She continues to take medication for behavioral problems and other health issues.  Candy has low mental capacity, her speech is very hard to understand, and she has no concept of money.  She could be so easily "lost" in our world; I would be very concerned about her safety.   Candy has her own bedroom, has the use of a living room, and takes her meals with her roommates in their own dining area.  Activities are planned that she attends and she participates in workshop activities.  Before having to stay in a wheelchair, she had a gym, swimming pool and other places that she could walk to on campus and be perfectly safe.  She has been happy in her community and has never asked to return to "our community."  Her needs are met, she receives excellent care and she is supervised 24/7.

In the above legal case, I do not oppose the Plaintiff to have the right to choose, but I do not want my right's as Candy's guardian or her right to choose to live in her present community be taken from her. White Haven is Candy's home.  Candy **deserves her choice** also and she has expressed to me and to others that she does not want to be moved anywhere.  If I understand the proposed Settlement Agreement, you would require me to continuously voice my sister's opposition to being placed in a different community.   I object to this provision as it places the burden of communication on me and not the State.

Please consider **all of the citizens** that live at White Haven Center.  The **best choice** for some like my sister, are to stay in their home at White Haven Center.


Sincerely,

*Paula Fitzgerald Wolfe*

Paula Fitzgerald Wolfe
Guardian for Candace Sue Fitzgerald

PFW
1479 Greenery
Florence, KY
41042



RECEIVED
HARRISBURG, PA

AUG 0 2 2011

MARY E. D'ANDREA, CLERK
Per _____

Clerk of Court
Federal Building & U.S. Courthouse
228 Walnut Street
Harrisburg, PA
17108-0983

171088980



Henry Sitko                                                                   July 22, 2011
2 Sitko Lane
White Haven, Pa.18661

Clerk of Court                                          Robert W. Meek
Federal Building & United States Courthouse            Disability Rights Network of Pa.
228 Walnut Street                                      1315 Walnut Street, Suite 500
Harrisburg, Pa.17108-0983                              Philadelphia , Pa. 19107-4705

RE: Benjamin v. Dept. of Public Welfare, No. 1:09-cv-1182-JEJ

Dear Mr. Meek and Judge Jones,

I am a brother to Joseph Sitko . My wife, Rosie and myself are very happy with the care at White Haven
Center. It is a great facility and we do not want Joseph to be moved or cared for anywhere else. We do not
oppose others choice to move , but don't take away a wonderful and caring place for the individuals who
are truly happy with their home. White Haven center is Joseph's home.
Joseph needs a routine to feel comfortable. To take him out of a home that he loves would be very traumatic
for him. The White Haven Center is a wonderful community that Joseph truly feels is his home . The care is
exceptional, the facility is spotless. I can walk in there at anytime unannounced and always made to feel
welcome. The Director, Mr. Fred Lokuta is the absolute best for the facility. He cares so much for the
individuals and their wellbeing as well as the families. He is always available to the families when ever he is
needed. To change a way of life for Joseph and all of the other individuals would be a crime in my opinion.
The staff is exceptional in the care of all the individuals at White Haven Center . The grounds are well
maintained and the White Haven Community is very proud to have the White Haven Center as part of our
Community.
Reality is that if Joseph was able to live outside of WHC on his own or with limited assistance it would
have happened a long time ago. The WHC is desperately needed by many individuals and their families.
I can not imagine any improvement in Josephs care other than where he is right now. I truly believe that
WHC is necessary for the hundreds or thousands that desperately need a facility to care for their loved
ones in a safe and loving environment. The outside world is a scary place for people without disabilities ,
Can you imagine it for an individual who has disabilities. I am 100% against moving Joseph to the regular
community.

I object to the Plaintiff's efforts to request relief on behalf of my loved one. I do not object to their right to
choose community care for their loved ones.

The class identifation procedures on pages 5-7 of the proposed Settlement Agreement require me and my
loved one to continuously voice our opposition to being placed on an ICF/MR Planning List. My current
opposition to community care has no permanence if I pass away or am incapacitated, the proposed
Settlement Agreement will ignore my recorded wishes that my loved one remain in ICF/MR care.

The proposed Settlement agreement places people on the State ICF/MR Planning List who have not
indicated that they want to be on the list.

Under the proposed Settlement Agreement no notice will be provided to me in the event that my loved one,
who is incapable of making decisions for himself is somehow demmed to have consented to community
care or has been placed on a State ICF/MR Planning list for any other reasons.

I object that the proposed Settlement Agreement allows DRN Facility Advocates to have equal say with
DPW personnel concerning who gets placed on the state ICF/MR Planning List.

The proposed Settlement Agreement provides for educational programs teaching ICF/MR residents and
their guardians how they can be placed on the State ICF/MR Planning list, but it does not provide for any
educational programs describing to me or my loved one how we can maintain my loved one's current care

JA880

environment and avoid being placed on the State ICF/MR Planning List. These educational programs should also include information about the potential dangers associated with community care and should include presentations from State Center Advocates favoring ICF/MR care.

The practical implications of the integration plan described on pages 9-12 of the proposed Settlement Agreement will be the depopulation and eventual closure of State-run ICF/MR. This depopulation and closure will deprive me and my loved one of a meaningful choice to remain in ICF/MR care and will impose community based care upon me and my loved one. This is precisely the lack of choice that the United States Supreme Court cautioned against in *Olmstead vs. Zimring.*

The proposed Settlement Agreement's provisions for consolidating budget lines will deprive State-run ICFs/MR of critical funding, thereby jeopardizing the quality of ICF/MR care, risking the health and safety of my loved one, and further imposing community-based care upon me and my loved one contrary to the Supreme Court's *Olmstead* decision.

I object to the proposed Settlement Agreement because no studies have been conducted and neither DRN nor DPW have made any showing that  the implementation plan is feasible. There is no evidence that there is sufficient community care facilities are available, that these facilities  are capable of meeting the needs of current ICF/MR residents, or that there will be sufficient funding to operate these community care facilities in light of recent budget cuts.

The proposed Settlement Agreement  provides for inadequate and one-sided status reports. Any such  status report should also include reports on deaths, injuries and other harm resulting from relocation to community-based forms of care.

I object that the Disability Rights Network of Pa. A publicly-funded entity will receive  $432,500 in legal fees as described on page 15 of the proposed Settlement Agreement, and respectfully submit that these funds would be better served supporting the care of residents either in ICF/MR or community-based facilities.

Please don't let a few individuals ruin what  is truly a wonderful community for the disabled.

Sincerely,

*Henry Sitko      Rosie Sitko*
Henry Sitko      Rosie Sitko

SCRANTON PA 185

RECEIVED
HARRISBURG, PA

AUG 02 2011

MARY E. D'ANDREA, CLERK
Per

Clerk of Court
Federal Building & United States Courthouse
228 Walnut St.
Harrisburg, PA. 17108-0983

1710889800

JA882

Mrs Beatrice Sitko
170 State Route 437
White Haven Pa 18661

July 25 2011

FILED
AUG 0 2 2011
PER
HARRISBURG PA.    DEPUTY CLERK

Attention Robert Meek

Clerk of Court
Federal Court
Federal Building, United States Courthouse
228 Walnut Street
Harrisburg Pa. 17108-0983

Disability Network of Pa
(Rights)
1315 Walnut St Suite 500
Philadelphia Pa. 19107-4705

Re: Benjamin v. Dept of Pub. Welfare, No 1:09-2V-1182-JEJ

Dear Mr. Meek & Judge Jones

My Name is Beatrice Sitko, I am 85 years of age the mother of Joseph J. Sitko who is 61yrsold. He is a resident of White Haven center for the past 45 yrs. His diagnosis is that he is profoundly mentaly challenged and has a I.Q. of around 5 yrs of age

He spent the first 16 yrs of his life with his family at our family farm It began to get very difficult to care for him. He needs space to expel his much accumulated energy & that is what he gets at WHC

He is supervised & well cared for by the staff. He is generally a happy go lucky fellow

He needs this type of supervision for his every day living

Our family sees him often & I still bring him home for overnight visits Occasionaly. It some times is difficult & hard but I try

Judge Jones if you chose to make a decision first have someone visit our Centers that way we as parents would feel a lot better

Beatrice Sitko

JA883

Beatrice Sitter
170 SR 437
White Haven, PA. 18661

RECEIVED
HARRISBURG, PA

AUG 0 2 2011

MARY E. D'ANDREA, CLERK
Per

Clerk of Courts
Federal Bldg. & U.S. Courthouse
228 Walnut St.
Harrisburg, PA. 17108-0983

JA884



Gerard S. Dunne
318 15th Street
Honesdale, PA 18431

July 28, 2011

Clerk of Court                                          Robert W. Meek
Federal Building & United States Courthouse             Disability Rights Network of PA
228 Walnut Street                                       1315 Walnut Street, Suite 500
Harrisburg, PA 17108-0083                               Philadelphia, PA 19107-4705

Re: Benjamin v. Dept. of Pub. Welfare, No. 1:09-cv-1182-JEJ

Dear Mr. Meek and Judge Jones,

My name is Gerard Dunne. I am the brother and legal guardian of Raymond T. Dunne. Raymond was born normal and healthy on February 11, 1955 at Wayne Memorial Hospital in Honesdale, PA. At the age of 3 months he contracted pneumococcal spinal meningitis which left him blind, physically disabled and profoundly mentally retarded. He currently resides in Pocono Hall at White Haven Center (W.H.C.), White Haven, PA.

I have been made aware of the class action suit Benjamin v. Dept. of Pub. Welfare, No. 1:09-cv-1182-JEJ and the creation of a "planning list" that would remove class members from state centers and move them into the community. Raymond is well aware of his surroundings and W.H.C. has been his home for over 42 years. It's staff is his extended family. I believe that removing Raymond from W.H.C. would cause him undue stress and have an overall negative impact on his health and well being. Therefore, as Raymond's legal guardian, I would strongly object to his name being placed on such a list.

Please take my feelings on this matter into consideration when making your decision to approve the settlement. Thank you.

Sincerely,

Gerard S. Dunne
Guardian of Raymond T. Dunne

JA885

G.S. DUNNE
318 15th ST.
HONESDALE, PA.
18431

RECEIVED
HARRISBURG, PA.

AUG 0 2 2011

MARY E. D'ANDREA, CLERK
Per _____

CLERK OF COURT
FEDERAL BLDG. AND U.S COURTHOUSE
228 WALNUT ST.
HARRISBURG, PA.

17108-0083

JA886

David Read
5180 Redwood Drive
Indiana, PA. 15701



July 27, 2011

Clerk of Court                                        Robert W. Meek
Federal Building and United States Courthouse         Disability Rights Network of PA
228 Walnut Street                                     1315 Walnut Street, Suite 500
Harrisburg, PA 17108-0983                             Philadelphia, PA 19107-4705

Re: **Benjamin v. Dept of Pub.Welfare, No, 1:09-cv-1182-JEJ**

Dear Mr. Meek and Judge Jones,

As a result of this court case, I have become a very concerned legal guardian of my
bother, Robert Read, who is a resident at the Polk Center in Polk, PA. My brother suffers
from severe mental retardation and is truly incapable of making even the simplest of
life's decisions. We have also observed that he does not deal effectively with any change
in his environment. This becomes very evident when he comes home for a visit and there
are changes in the house. The thought of relocation out of Polk would be a major and
devastating life changing event that will result in a serious safety concern. When things
are not as Bob expects, he has a tendency to walk away, without any comprehension for
the dangers posed by passing vehicles or the surrounding environment. This situation
requires an increased and diligent monitoring effort at Polk. I do not believe that he
would receive any where near the attention required to assure his safety and well being if
he were to be relocated to a community-based home.

Bob has been a resident at Polk for approximately 47 years. Since my brother is nearly
53 years old, the vast majority of his life has been spent at this residence. Bob has made
positive improvements in his personal abilities over the years. Obviously, this is due to
the quality of care and effective programs at Polk for the mentally retarded. At the same
time, our family knew that he was safe, protected and cared for medically on a constant
basis by a quality, well trained staff. In summary, this environment has provided Bob
with a stable and consistent life style that has enabled him, and our family, to deal
effectively with his mental challenges.

I would like to voice my concerns and objections to this case as follows:

- I do not oppose the Plaintiff's rights to choose community care for
  themselves, but I object to the Plaintiff's efforts to request relief on behalf
  of my brother.
- The class identification procedures on pages 5-7 of the proposed
  Settlement Agreement require me and my brother to continuously voice

our opposition to being placed on an ICF/MR Planning List. My current opposition to community care has no permanence if I pass away or am incapacitated, the proposed Settlement Agreement will ignore my recorded wished that Bob remain in ICF/MR care.

- The proposed Settlement Agreement places people on the State ICF/MR Planning List who have not indicated that they want to be on the list.
- Under the proposed Settlement Agreement no notice will be provided to me in the event that Bob, who is incapable of making decisions for himself, is somehow deemed to have consented to community care or has been placed on a State ICF/MR Planning List for any other reason.
- I object that the proposed Settlement Agreement allows DRN Facility Advocates to have equal say with DPW personnel concerning who gets placed on the State ICF / MR Planning List.
- The proposed Settlement Agreement provides for educational programs teaching ICF/MR residents and their guardians how they can be placed on the State ICF/MR Planning List, but it does not provide for any educational programs describing to me and Bob how we can maintain his current care environment and avoid being placed on the State ICF/MR Planning List. These educational programs should also include presentations from State Center advocates favoring ICF/MR care.
- The practical implications of the integration plan described on pages 9-12 of the proposed Settlement Agreement will be the depopulation and eventual closure of State-run ICF/MR. This depopulation and closure will deprive me and my loved one of a meaningful choice to remain at Polk and will impose community based care upon me and Bob. This is precisely the lack of choice that the United States Supreme Court cautioned against in *Olmstead v. Zimring*.
- The proposed Settlement Agreement's provisions for consolidating budget lines will deprive State-run ICF/MR of critical funding, thereby jeopardizing the quality of ICF/MR care, risking the health and safety of Bob, and further imposing community-based care upon me and my brother contrary to the Supreme Court's *Olmstead* decision.
- I object to the proposed Settlement Agreement because no studies have been conducted and neither DRN nor DPW have made any showing that the implementation plan is feasible. There is no evidence that sufficient community care facilities are available, that these facilities are capable of meeting the needs of the current ICF/MR residents, or that there will be sufficient funding to operate these community-based care facilities in light of recent budget cuts.
- The proposed Settlement Agreement provides for inadequate and one-sided status reports. Any such status report should also include reports on deaths, injuries, and other harm resulting from relocation to community-based forms of care.
- I object that the Disability Rights Network of Pennsylvania, a publicly-funded entity, will receive $432,500 in legal fees as described on page 15 of the proposed Settlement Agreement, and respectfully submit that these

funds would be better served supporting the care of residents either in ICF/MR or community-based care facilities.

I would like to close with the reiteration of my opinion that any move to a community-based center would have significantly detrimental effects on my brother. I take serious objections that the Settlement Agreement makes it a constant challenge to maintain his residence at Polk, even when he is totally incapable of making any decision to the contrary. The burden should be on the DRN to prove that it is Bob's (or legal guardian's) desire to move out and that everyone fully comprehends this decision's consequences.

Sincerely,

David Read
Guardian of
Robert Read

REAL
5180 REDWOOD DRIVE
INDIANA, PA. 15701

RECEIVED
HARRISBURG PA

AUG 0 2 2011

MARY E. D'ANDREA, CLERK

Per _____

CLERK OF COURT
FEDERAL BUILDING AND U.S. COURTHOUSE
228 WALNUT ST.
HARRISBURG, PA. 17108 - C953

17108#9800

JA890

Ann Marie Vodzak
51 Birch Street
Dallas, PA 18612



July 29, 2011

Clerk of Court
Federal Building & United States Courthouse
228 Walnut Street
Harrisburg, PA 17108-0983

Robert W. Meek
Disability Rights Network of PA
1315 Walnut Street, Suite 500
Philadelphia, PA 19107-4705

Re: **Benjamin v. Dept. of Pub. Welfare, No. 1:09-cv-1182-JEJ**

Dear Mr. Meek and Judge Jones,

My name is Ann Marie Vodzak. I am representing my brother James Zuchoski. I am in the process of becoming Guardian of the Person for James. James resides in White Haven Center and has lived there since the late 1980's. His MH/MR disabilities are complicated and care-intensive. His functioning abilities place him in the Severe to Profound range. James requires around-the-clock care. He has balance, vision, and hearing impairments. He has complicated and challenging behavioral issues, communicates poorly and is difficult to understand. He is given to bouts of aggressive behavior towards others and self-destructive behavior when frustrated. He is completely dependant upon his caregivers and has been declared an incompetent in Orphan's Court. He is extremely vulnerable and has no ability to either comprehend nor assess danger, can and will agree at times to things if given options while never being able to understand the outcome, and will become obstinate once he gets an idea in his head of how he wants something to be.

This settlement will have a profound affect on the lives of severe and complicated MH/MR people. It is my strongest belief that the individualized setting at an ICF/MR such as White Haven Center, as well as other facilities across the state, provides the safest, most accommodating, and secure environment for individuals with severe retardation. He is living in a clean, well-staffed, well-kept home where he is fed, given medication, and allowed the freedom to be as he is in a community of his peers. He attends an on-site workshop and is supervised and understood by staff that is properly trained. He is happy in an environment suited for him. I am deeply concerned for his safety, his health both physically and mentally, and for his ability to cope if forced out into a group home. Too many safeguards would need to be in place and guaranteed for individuals like my brother to be able to live

successfully in society. I do not understand how lawmakers do not recognize that ICF/MRs function in the same capacity as nursing homes for the elderly. If this decision to eliminate institutions for complicated MH/MR residents is enacted, then you are sending the message to society that nursing homes and hospitals for individuals with mental illness are violating "the rights" of those people also. Therefore the implication is, if someone has complicated physical and/or mental impairments and their needs cannot be met in CLAs, then they should be prepared to live out their days as homeless or incarcerated because the state refuses to recognize that there is a demand for an alternative living arrangement other than community placement in a group home. Perhaps the state is counting on the fact that if they provide minimal options for care, this will act as '**natural selection**', as most will not survive the transition into the community and therefore, decrease the population taking themselves off the MH/MR budget. I personally have found that, while well-intentioned, most advocates for the elimination of facilities are basing their zealous cause on alternative agendas and not on the reality that families have known all too well. Complex needs of difficult MH/MR clients require a facility that guarantees security, is monitored and inspected, and maintains shifts that are well-staffed for consistent around-the-clock care.

My objections to the proposed settlement include:

- I do not oppose the Plaintiff's right to choose community care for themselves, but I object to Plaintiffs' efforts to request relief on behalf of my loved one.

- The class identification procedures on pages 5-7 of the proposed Settlement Agreement require me and my loved one to continuously voice our opposition to being placed on an ICF/MR Planning List. My current opposition to community care has no permanence If I pass away or am incapacitated, the proposed Settlement Agreement will ignore my recorded wishes that my loved one remain in ICF/MR care.

- The proposed Settlement Agreement places people on the State ICF/MR Planning List who have not indicated that they want to be on the List.

- Under the proposed Settlement Agreement no notice will be provided to me in the event that my loved one, who is incapable of making decisions for his/herself, is somehow deemed to have consented to community care or has been placed on a State ICF/MR Planning List for any other reason.

- I object that the proposed Settlement Agreement allows DRN Facility Advocates to have equal say with DPW personnel concerning who gets placed on the State ICF/MR Planning List.

JA892

- The proposed Settlement Agreement provides for educational programs teaching ICF/MR residents and their guardians how they can be placed on the State ICF/MR Planning List, but it does not provide for any educational programs describing to me and my loved one how we can maintain my loved one's current care environment and avoid being placed on the State ICF/MR Planning List. These educational programs should also include information about the potential dangers associated with community care and should include presentations from State Center advocates favoring ICF/MR care.

- The practical implications of the integration plan described on pages 9-12 of the proposed Settlement Agreement will be the depopulation and eventual closure of State-run ICFs/MR. This depopulation and closure will deprive me and my loved one of a meaningful choice to remain in ICF/MR care and will impose community based care upon me and my loved one. This is precisely the lack of choice that the United States Supreme Court cautioned against in *Olmstead v. Zimring*.

- The proposed Settlement Agreement's provisions for consolidating budget lines will deprive State-run ICFs/MR of critical funding, thereby jeopardizing the quality of ICF/MR care, risking the health and safety of my loved one, and further imposing community-based care upon me and my loved one contrary to the Supreme Court's *Olmstead* decision.

- I object to the proposed Settlement Agreement because no studies have been conducted and neither DRN nor DPW have made any showing that the implementation plan is feasible. There is no evidence that sufficient community care facilities are available, that these facilities are capable of meeting the needs of current ICF/MR residents, or that there will be sufficient funding to operate these community care facilities in light of recent budget cuts.

- The proposed Settlement Agreement provides for inadequate and one-sided status reports. Any such status report should also include reports on deaths, injuries, and other harm resulting from relocation to community-based forms of care.

- I object that the Disability Rights Network of Pennsylvania, a publicly-funded entity, will receive $432,500 in legal fees as described on page 15 of the proposed Settlement Agreement, and respectfully submit that these funds would be better served supporting the care of residents either in ICF/MR or community-based care facilities.


It is my most sincere desire that by stating my objections to this proposed settlement you, as educated professional decision-makers, will take under consideration the concerns of the families and the well-being of the residents themselves before you

make your decision. I am reaching out to the hearts and consciences of the lawmakers whose ability to judge the fate of places like White Haven Center and the other remaining Centers in the state--it is critical. Your decision will have a profound and irrevocable affect that must not be taken lightly. You are setting a precedent for the future fate of the segment of the population who are completely vulnerable and dependant upon the sense of justice that current political visionary accepted responsibility for when elected to your positions.

Thank you for your time to consider the families of these most innocents.


Sincerely,

Ann Marie Vodzak

Ann Marie Vodzak
Guardian (pending) of James Zuchoski

Ann Vodzak
51 Birch Street
Dallas, PA 18612



RECEIVED
HARRISBURG, PA

AUG 0 2 2011

MARY E. D'ANDREA, CLERK
Per

*Clerk of Court*
*Federal Building & United States Courthouse*
*228 Walnut St.*
*Harrisburg, PA 17108-0983*

171089800

JA895